1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

ATTACHMATE CORPORATION,                    CASE NO. C09-1161 MJP

11
                        Plaintiff,          ORDER ON DEFENDANT'S
                                            SUMMARY JUDGMENT MOTIONS
12          v.                              AND PLAINTIFF'S MOTION FOR
                                            PARTIAL SUMMARY JUDGMENT
13
        HEALTH NET, INC.,

14
                        Defendant.

15

16          This matter comes before the Court on Defendant Health Net, Inc.'s ("Health Net") two

17  motions for summary judgment (Dkt. Nos. 54, 70) and Plaintiff Attachmate Corporation's

18  ("Attachmate") motion for partial summary judgment (Dkt. No. 99).  Having reviewed the

19  motions, the responses (Dkt. Nos. 75, 92, 107), the replies (Dkt. Nos. 87, 96, 112), all relevant

20  documents in the docket, the Court DENIES in part and GRANTS in part Health Net's first

21  motion (Dkt. No. 54), DENIES Health Net's second motion (Dkt. No. 70), and GRANTS

22  Attachmate's motion in part, while reserving ruling on one narrow issue.

23                                      **Background**

24
ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 1

1    Attachmate has developed and distributed a variety of software products, including the

2    Reflection family of products that Health Net has purchased. (Jackson Decl. ¶¶ 7-8, Exs. F & G;

3    Stephenson Dep. Ex. 111; Sall Dep. Exs. 5 & 6.)  This software is allegedly copyrighted.

4    (Compl. Ex. A.)  In 2002, Health Net and Attachmate negotiated and signed an End User License

5    Agreement ("EULA").  (Sall Dep. at 44-47; Sall Dep. Ex. 6.)  The parties signed the document,

6    which required any modifications to be made through a signed agreement.  (Id.)  In 2004, the

7    parties signed a written amendment to the 2002 EULA.  (Sall Dep. Ex. 9.)  This 2004 EULA

8    specified the terms of the license and showed a negotiation and agreement as to the scope and

9    pricing for maintenance services Attachmate was to provide to Health Net.  (Id.)   Health Net

10    renewed its maintenance plans from 2001 through the end of 2008.  (Sall. Dep. at 54:1-15.)

11    Attachmate issued a new EULA in 2005 as part of a new version of the Reflection

12    software that Health Net purchased.  (Stephenson Dep. Ex. 111.)  This EULA required Health

13    Net to "promptly acquire the necessary additional licenses without the benefit of any otherwise

14    applicable discount . . . in the event of unauthorized copying, distribution or use of the Software.

15    . . ."  (Id.)  By installing copies of this new version of the software Health Net accepted the 2005

16    EULA by click-through acceptance, rather than written acceptance.  (Whitehurst Dep. Ex. 59;

17    Stephenson Dep. Ex. 111; Flynn Dep. at 55-59.)

18    Attachmate filed suit against Health Net, alleging that it over-installed copies of the

19    Reflection software and failed to abide by certain contractual terms.  Attachmate pursues two

20    claims: (1) a violation of the Copyright Act, and (2) a breach of contract.  The Court previously

21    denied Health Net's motion to dismiss Attachmate's breach of contract claim.  (Dkt. No. 24.)

22    The Court held that the 2005 EULA contained an extra element (a promise that Health Net

23    would purchase new licenses if it installed additional copies of the software) that placed the

24

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 2

1   claim outside of the Copyright Act's preemptive scope.  Because Health Net failed to move to

2   dismiss the claim as to the 2002 and 2004 EULAs, the Court did not rule on whether those

3   EULAs provided contractual rights that were or were not preempted.

4        Health Net now seeks summary judgment on Attachmate's breach of contract claim on

5   the theory that the 2005 EULA is not a valid contract.  (Dkt. No. 54.)  Health Net argues further

6   that the 2002 and 2004 EULAs' contractual rights are all preempted.  In a separate motion,

7   Health Net argues that the statute of limitations bars Attachmate's breach of contract claim.

8   (Dkt. No. 70.)  Attachmate seeks partial summary judgment as to five of Health Net's affirmative

9   defenses.  (Dkt. No. 99.)

10                                            **Analysis**

11        The pending summary judgments require an analysis of five main issues: (1) whether the

12   Uniform Commercial Code applies to Attachmate's contract claim; (2) whether the 2005 EULA

13   is valid; (3) whether the 2002 and 2004 EULAs contain contractual rights that the Copyright Act

14   does not preempt; (4) whether the statute of limitations has run on Attachmate's breach of

15   contract claim; and (5) whether Health Net may pursue five of its affirmative defenses.

16   A.    <u>Standard</u>

17        Summary judgment is proper if the pleadings, depositions, answers to interrogatories,

18   admissions on file, and affidavits show that there are no genuine issues of material fact for trial

19   and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

20   Material facts are those "that might affect the outcome of the suit under the governing law."

21   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The underlying facts are viewed in

22   the light most favorable to the party opposing the motion.  <u>Matsushita Elec. Indus. Co. v. Zenith</u>

23   <u>Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The party moving for summary judgment has the burden

24

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 3

1    to show initially the absence of a genuine issue concerning any material fact.  Adickes v. S.H.

2    Kress & Co., 398 U.S. 144, 159 (1970).  Once the moving party has met its initial burden, the

3    burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an

4    element essential to that party's case, and on which that party will bear the burden of proof at

5    trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

6    B.       The UCC Does Not Apply

7           Health Net seeks dismissal of Attachmate's breach of contract claim largely on the

8    incorrect theory that the UCC, not the common law applies.  In pressing its point, Health Net

9    badly mischaracterizes Washington law.  (Dkt. No. 54 at 12.)  Health Net asserts that "[t]he

10   Washington Supreme Court in Mortenson unequivocally states 'we accept this proposition' that

11   Article 2 of the UCC applies to software licensing, and cited cases in support."  (Dkt. No. 87 at 8

12   (quoting M.A. Mortenson Co., Inc. v. Timberline Software Corp., 140 Wn.2d 568 (2000)).)

13   While the Court applied the UCC in Mortenson it did so only because the parties stipulated to its

14   applicability: "[t]he parties agree in their briefing that Article 2 applies to the licensing of

15   software, and we accept this proposition."  Id. at 578.  The Court made no ruling that the UCC

16   "unequivocally" applies to software licenses.  Health Net's attempt to conform the law to its

17   litigation posture is misleading.  The Court does not abide such tactics and REJECTS Health

18   Net's erroneous argument.  Mortenson does not bind this Court given that the parties fiercely

19   dispute whether the UCC applies.

20          The weight of authority favors application of common law and not the UCC with regard

21   to software licenses.  Considering a license agreement for the sale of a patented board game, the

22   Federal Circuit in Lamle v. Mattel, Inc. held that the UCC did not apply. 394 F.3d 1355 (Fed.

23   Cir. 2005).  The court stated in response to one party's argument the UCC applied that "[t]his is

24

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 4

1 manifestly incorrect, since a license for intellectual property, including a license for a patent, is

2 not a sale of goods." Id. at 1359 n.2 (applying California law).  This reasoning is persuasive.

3 The Eleventh Circuit agreed in an unpublished decision regarding delivery of software.  Systems

4 Unlimited, Inc. v. Cisco Sys., Inc., 228 F. App'x 854, 859 (11th Cir. 2007).  A district court in

5 Michigan considered whether the UCC applied to a license for copyright images and concluded

6 the UCC did not apply.  Flying Double B, LLC v. Doner Intern. Ltd., 2008 WL 2922864, at *5

7 (E.D. Mich. July 28, 2008).  The Court here applies Washington common law, not the UCC.

8 C.      Preemption And The 2005 EULA

9          The Court has already held that the 2005 EULA contains an "extra element," making

10 Attachmate's breach of contract claim related to this EULA immune to the preemptive scope of

11 the Copyright Act. (Dkt. No. 24.)  Health Net's second attempt to obtain dismissal of the claim

12 turns on its argument that the 2005 EULA is an improper modification under the UCC.  (Dkt.

13 No. 54 at 15.)  While the law of case might be properly invoked to dismiss the argument, the

14 Court considers it on its merits.  The legal support for Health Net's position is entirely dependent

15 on the application of the UCC.  (Dkt. No. 54 at 13-14 (citing RCW 62A.2-209(2)).)  Because the

16 UCC does not apply, the Court DENIES the motion as to the 2005 EULA.

17          The Court also agrees with Attachmate that the 2005 EULA is not a modification, but is

18 instead a stand-alone contract.  It satisfies all elements of a common law contract: an offer,

19 acceptance, and consideration.  See Citizens for Des Moines v. Petersen, 125 Wn. App. 760, 766

20 (2005).  The 2005 EULA clearly extended an offer, which Health Net accepted when it installed

21 the copies and clicked the click-through agreement.  (Stephenson Dep. at 31-32; Dkt. No. 54 at

22 16 n.5 (seemingly admitting that Health Net employees accepted the click-through EULA).)

23 Neither party disputes the exchange of consideration.  The 2005 EULA's terms make clear that it

24

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 5

1   is a separate agreement from the 2002 and 2004 EULAs.  The EULA is expressly limited to the

2   "enclosed WRQ software product"—a new version of the software.  (Dkt. No. 1 at 79; Flynn

3   Dep. Vol. I at 55-56.)   There is no support for Health Net's argument that the 2005 EULA is just

4   a modification to the 2002 and 2004 EULAs.  The Court DENIES summary judgment as to the

5   2005 EULA.

6   D.    <u>The 2004 EULA's Maintenance Agreement Is Not Preempted</u>

7        Health Net argues that the Copyright Act preempts the breach of contract claims related

8   to the 2004 EULA's maintenance agreement.  The Court disagrees.

9        The Court previously explained the rules applicable to Copyright preemption in its order

10  on Health Net's motion to dismiss and incorporates that statement here.  (Dkt. No. 24 at 2-3.)  In

11  relevant part, the Court explained that a contract claim is not preempted where there is a bilateral

12  expectation of compensation agreed on by the parties.  <u>See</u> <u>Grosso v. Miramax Film Corp.</u>, 388

13  F.3d 965, 968 (9th Cir. 2004).

14       The Copyright Act does not preempt Attachmate's breach of contract claim related to the

15  2004 EULA's requirement that Health Net pay for maintenance of the software products.  The

16  2004 EULA sets out a set of agreed-upon prices for the total licenses Health Net requested.

17  (Dkt. No. 1 at 63.)  The EULA also gave Health Net credits for licenses it surrendered and did

18  not have to pay for maintenance as to those licenses.  (<u>Id.</u>)  Implicit in this formula is Health

19  Net's agreement to pay for maintenance for all copies of the software that required maintenance.

20  The Maintenance Plan indeed sets out that "[i]n return for payment of applicable annual

21  Maintenance fees, a Customer is entitled to receive certain maintenance services. . . ."  (Dkt. No.

22  1 at 67.)  The obligation to pay for maintenance is distinct from Attachmate's Copyright Act

23  rights which revolve around duplication and reproduction of the Reflection software.  The Court

24

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 6

1    DENIES the motion for summary judgment on this claim.  Attachmate may pursue its breach of

2    contract claim related to his provision of the 2004 EULA.

3    E.       Additional Agreements In The 2002 And 2004 EULAs Are Preempted

4           Health Net correctly argues that any breach of contract claim arising out of the remaining

5    terms of the 2002 and 2004 EULAs are preempted.

6           The 2002 and 2004 EULAs lack a bilateral agreement as to compensation for additional

7    installation of copies of the Attachmate software.  The terms Attachmate cites in its brief relate

8    only to the permissible uses of the software and the requirement that excess copies be destroyed.

9    (Dkt. No. 75 at 15-16.)  There is no express requirement that Health Net purchase additional

10   copies; there is only an agreement not to reproduce or distribute the copyrighted works, which is

11   squarely within the preemptive field of the Copyright Act.  17 U.S.C. § 106.  The Court

12   GRANTS summary judgment on this narrow issue.

13          Attachmate argues that not all use-related contract claims are preempted by the Copyright

14   Act.  (Dkt. No. 75 at 8.)  While the Court acknowledges this rule, it finds it inapplicable to

15   Attachmate's remaining claims.  In Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079 (9th Cir.

16   2005), the court held that an agreement prohibiting the use of a product derived from licensed

17   software (a bitstream) was distinct from an agreement not to copy or reproduce the software.  Id.

18   at 1089-90.  A breach of contract claim related to the end-product was not preempted.  However,

19   a recent Ninth Circuit case Attachmate relies on shows how narrow this rule is.  See Montz v.

20   Pilgrim Films & Television, Inc., 606 F.3d 1153 (9th Cir. 2010).  In Montz the plaintiffs sought

21   lost revenue from the defendants who allegedly breached an implied-in-fact contract and used

22   plaintiffs' television series idea without paying royalties.  The Court held the contract claim was

23   preempted because the "right to receive a share of the profits and credit is thus merely derivate of

24

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 7

1   the rights fundamentally at issue."  Id. at 1158.  Thus, although not all use claims are preempted,

2   the use must be distinct from the work covered by the copyright.

3        Contrary to Attachmate's argument, the 2002 EULA's monitoring and control

4   requirements are derivative of the rights the Copyright Act secure and a breach of contract claim

5   related thereto is preempted.  17 U.S.C. § 106 (covering reproduction, distribution, and display

6   of copyrighted materials).  The 2002 EULA (which is incorporated into the 2004 EULA)

7   required Health Net to "[i]mplement internal safeguards to prevent any unauthorized copying,

8   distribution or use of the Software."  2002 EULA ¶ 4.  This right is not qualitatively different

9   from the rights ensured by the Copyright Act.  The Act preempts the breach of contract claim

10  tied to this provision in the 2002 and 2004 EULAs.  The Court GRANTS summary judgment on

11  this issue.

12       Attachmate also argues that two other promises in the 2002 and 2004 EULA provide it a

13  contract claim distinct from the Copyright Act.  (Dkt. No. 75 at 18-19 (network server

14  availability), 20 (reporting and destruction requirements).)  As Health Net points out, however,

15  these purported breaches are not properly before the Court because they are not alleged in the

16  complaint.  See Wasco Prods. Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006).

17  The Court agrees and rejects Attachmate's argument.

18       Attachmate also tries to salvage a portion of its breach of contract claim on the theory

19  that there are implied-in-fact terms that are not preempted.  Except as to the maintenance

20  agreement discussed above, the argument is unavailing.  A "'party to a valid express contract is

21  bound by the provisions of that contract, and may not disregard the same and bring an action on

22  an implied contract relating to the same matter, in contravention of the express contract.'"

23  MacDonald v. Hayner, 43 Wn. App. 81, 85-86 (1986) (quoting Chandler v. Wash. Toll Bridge

24

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 8

1    Auth., 17 Wn.2d 591, 604 (1943)).  Only the maintenance agreement's implied term of payment

2    is sufficiently clear and in line with the express terms of the 2004 EULA to sustain an implied-

3    in-fact claim.  Attachmate's argument is otherwise unpersuasive and the Court does not find that

4    any of the preempted claims explained above are saved by any implied-in-fact terms.

5           In summary, Attachmate may pursue its breach of contract claim as to the 2005 EULA's

6    promise to bilateral promise of compensation for over-installation and the 2004 EULA's

7    agreement as to maintenance.  Health Net's motion for summary judgment on this issue is thus

8    DENIED in part and GRANTED in part.

9    F.      Statute Of Limitations

10           Health Net moves for summary judgment on the theory that a four-year statute of

11    limitations bars Attachmate's breach of contract claim.  (Dkt. No. 70.)  Health Net is incorrect as

12    to the law and has not demonstrated the absence of a dispute over material facts.  The Court

13    DENIES the motion.

14           Health Net erroneously asserts that the UCC applies to this action and provides a four-

15    year statute of limitation.  (Dkt. No. 70 at 7.)  As explained above, the UCC does not govern a

16    license agreement for software.  The Court REJECTS application of the four year statute of

17    limitations or the UCC's bar on the discovery rule.  Attachmate sets forth the proper standard: a

18    six-year statute of limitations applies to this action.  (Dkt. No. 92 at 8 (citing RCW 4.16.040).)

19    The discovery rule also applies to contract actions in Washington, although it is Plaintiff's

20    burden to show that reasonable diligence would not have resulted in discovery of the cause of

21    action outside of the limitation.  Burns v. McClinton, 135 Wn. App. 285, 299 (2006).

22           The facts do not support finding that Attachmate knew or should have known of Health

23    Net's breaching conduct more than six years before filing suit.  Without citing any facts, Health

24

1    Net contends that any of its over-installation must have occurred more than four years prior

2    (relying on the UCC statute of limitations) to the filing of the suit.  It is Health Net's burden to

3    prove the statute of limitations has run.  Haslund v. City of Seattle, 86 Wn.2d 607, 620 (1976).

4    Health Net only points to one email from Attachmate that suggests that some of the products

5    were used for over 7 years.  (Dkt. No. 71.)  However, this does not show whether that use

6    violated the license agreements throughout the entire period.  Health Net has not met its burden.

7    There is a dispute of fact as to when the breach occurred.  There is also a dispute as to when

8    Attachmate should have discovered the breach is a question of fact that remains in dispute.  The

9    Court DENIES the motion.

10          Attachmate argues that Health Net tolled the statute of limitations by fraudulently

11   concealing its breaches.  (Dkt. No. 89 at 16.)  This claim requires Attachmate to prove (1) it was

12   unaware of the breach, (2) Health Net consciously engaged in affirmative conduct designed to

13   prevent notice of the breach, and (3) Attachmate exercised reasonable diligence in trying to

14   discover the withheld information.  Crisman v. Crisman, 85 Wn. App. 15, 22-23 (1997).  There

15   is some evidence Health Net attempted to conceal the overuse.  (See Dkt. No. 79 at 55-56.)  The

16   evidence as to Attachmate's diligence is a question of fact that remains in dispute.  This is

17   another basis on which the Court DENIES summary judgment.

18          Attachmate argues further that the theory of continuing breach is applicable and bars

19   Health Net's motion.  The Court agrees.  The statute of limitations on a breach of contract claim

20   related to a contract for continuing services begins to run when the contract is terminated.

21   Richards v. Pac. Nat'l Bank of Washington, 10 Wn. App. 542, 549 (1974).  Here, Attachmate

22   pursues a claim for breach of contract related to its maintenance plan—a continuing service.

23

24

1 | Attachmate may pursue a claim that any breach of this contract did not occur until the contract
2 | was terminated.

3 | G.  Attachmate's Motion For Partial Summary Judgment

4 | Attachmate seeks partial summary judgment on Health Net's affirmative defense that: (1)
5 | the over-installation was accidental and unintended (Affirmative Defense No. 3); (2) that the
6 | extra copies were not used (Affirmative Defense No. 4); (3) that the use was "non-infringing fair
7 | use under 17 U.S.C. § 107" (Affirmative Defense No. 11); (4) that Health Net's acts were "an
8 | essential step and thus are not infringing under 17 U.S.C. § 117(a)(1)" (Affirmative Defense No.
9 | 12); and (5) that Health Net's acts were for archival purposes and are not infringing under 17
10 | U.S.C. § 117(a)(2) (Affirmative Defense No. 13).  (Dkt. No. 99 at 2-3.)

11 | Health Net concedes that the Court should dismiss Affirmative Defenses 11, 12 and 13.
12 | The Court GRANTS Attachmate's motion and DISMISSES these defenses.  Health argues that it
13 | may still pursue Affirmative Defenses 3 and 4.  The Court largely disagrees, and GRANTS in
14 | part Attachmate's motion, but reserves ruling on one narrow issue.

15 | Health Net concedes that intent is not an issue as to liability on Attachmate's copyright
16 | claim, but argues that evidence of intent is relevant to damages.  Summary judgment on this
17 | issue is proper because liability under the Copyright Act does not turn on intent.  See Educ.
18 | Testing Serv. v. Simon, 95 F. Supp. 2d 1081, 1087 (C.D. Cal. 1999).  The Court GRANTS the
19 | motion on this issue.  As Attachmate notes, however, intent may be an issue as to damages, and
20 | Attachmate has not moved to preclude such evidence in its current motion.  (Dkt. No. 99 at 9
21 | n.6.)  Health Net may raise questions the issue of intent in the future, but only as damages, not
22 | liability.

23 |
24 |

ORDER ON DEFENDANT'S SUMMARY
JUDGMENT MOTIONS AND PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT- 11

1    Health Net has made no argument as to why its purported non-use of Attachmate's

2    products is a relevant defense to Attachmate's copyright claim. The Court GRANTS the motion

3    as to this defense.

4        Health Net asks the Court to preserve its Affirmative Defenses Nos. 3 and 4 with regard

5    to Attachmate's breach of contract claim. (Dkt. No. 107 at 5-8.)  In its opening brief Attachmate

6    failed to mention whether or not it sought dismissal of the defenses with regard to its breach of

7    contract claims.  It provided legal citation only to principles of Copyright law. (Dkt. No. 99 at 3-

8    4, 6-7, 8-9.)  Attachmate only addressed the issue in its reply brief, arguing for the first time that

9    use or non use and intent are not defenses to contract claims. (Dkt. No. 112 at 5.)  The argument

10   was not properly raised.  Rather than dismiss the argument, which the Court finds persuasive, the

11   Court offers Health Net the opportunity to file a 3 page reply brief on this issue.  The brief must

12   be submitted by no later than 5 p.m. on November 1, 2010.  The Court therefore RESERVES

13   RULING on this issue.

14   H.    Page Limits And Successive Motions

15       In its opposition to Health Net's motion as to the statute of limitations, Attachmate argues

16   that the Court should dismiss the motion as an impermissible successive motion that is filed only

17   to avoid the page limitation. (Dkt. No. 92 at 5.)  While the Court is weary of successive motions,

18   it does not strike the motion.  The Court points out that Attachmate is equally guilty of

19   attempting to skirt the page limitations in its opposition brief to Health Net's first motion.  If

20   Attachmate actually placed the fifteen footnotes it used into a proper font in the body of the brief,

21   it would clearly exceed the page limitation.  Both parties use footnotes inappropriately.  The

22   Court firmly believes that footnotes are not the proper method to introduce important legal or

23

24   ORDER ON DEFENDANT'S SUMMARY
     JUDGMENT MOTIONS AND PLAINTIFF'S
     MOTION FOR PARTIAL SUMMARY
     JUDGMENT- 12

1  factual issues for the Court's attention.  The Court warns the parties it will strike future

2  successive motions or footnotes that are used to avoid page limitations.

3  **Conclusion**

4        Attachmate may proceed on its breach of contract claim regarding the 2004 and 2005

5  EULAs, as outlined above.  However, Health Net has shown that the 2002 EULA and certain

6  elements of the 2004 EULA contain contractual provisions the Copyright Act preempts.  The

7  Court therefore GRANTS in part and DENIES in part Health Net's motion on these issues.  (Dkt.

8  No. 54.)  The Court DENIES Health Net's motion for summary judgment on the statute of

9  limitations.  (Dkt. No. 70.)  There remains a dispute of fact as to when the breaches occurred and

10  when Attachmate should have or could have discovered the breaches.  The Court GRANTS in

11  part Attachmate's motion for partial summary judgment and dismisses the five affirmative

12  defenses related to Health Net's copyright claims (Affirmative Defenses 3, 4, 11, 12, & 13).

13  (Dkt. No. 99.)    The Court RESERVES RULING on whether defenses numbers 3 and 4 should

14  be dismissed as to the breach of contract claim.  Health Net may file a brief of no more than 3

15  pages on this issue by no later than 5 p.m. on November 1, 2010.

16        The clerk is ordered to provide copies of this order to all counsel.

17        Dated this 26th day of October, 2010.

18

19

20                                   Marsha J. Pechman

21                                   United States District Judge

22

23

24